**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rhonda Lee Napier-Keenan,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-17-01020-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Rhonda Lee Napier-Keenan's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 10, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Opposition (Doc. 17, "Def.'s Br."), and Plaintiff's Reply (Doc. 18, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 8, R.) and now reverses the Administrative Law Judge's decision (R. at 22-35) as upheld by the Appeals Council (R. at 1-3).

**I.     BACKGROUND**

Plaintiff filed her Application on June 14, 2013, for a period of disability beginning March 1, 2011. (R. at 179-80.) Plaintiff's claim was denied initially on September 27, 2013 (R. at 85), and on reconsideration on February 3, 2014 (R. at 122-24). Plaintiff then testified at a hearing held before an Administrative Law Judge ("ALJ")

on January 22, 2015. (R. at 43-84.) On August 28, 2015, the ALJ denied Plaintiff's Application. (R. at 22-35.) On January 31, 2017, the Appeals Council upheld the ALJ's decision. (R. at 1-3.) The present appeal followed.

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ found that Plaintiff has severe impairments of status post right colectomy for stage 1 cecal carcinoma, status post right inguinal hernia repair, status post right shoulder subacromial decompression and manipulation under anesthesia, status post-surgical repair right arm nerves, and cervical degenerative disc disease (R. at 25), but that Plaintiff has the residual functional capacity ("RFC") to perform skilled sedentary work with some limitations, including her past work as a cashier and receptionist, such that Plaintiff is not disabled under the Act (R. at 34-35).

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erred in finding that Plaintiff's headaches were not a severe impairment by ignoring the treating physician's relevant assessment; and (2) the ALJ erred by failing to give specific, clear and convincing reasons supported by substantial evidence in the record as a whole for discounting Plaintiff's symptom testimony. (Pl.'s Br. at 10-25.)

### A. The ALJ Erred by Ignoring the Treating Physician's Headache Assessment and Finding that Plaintiff's Headaches Were Not a Severe Impairment

Plaintiff first argues the ALJ committed reversible error at step two of the five-step evaluative process by finding that Plaintiff's headaches were not a severe impairment. (Pl.'s Br. at 10-19.) An ALJ may find an impairment or combination of impairments to be non-severe at step two of the inquiry "only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996)) (internal quotations and citation omitted). Step two's "de minimis" standard is intended to "dispose of groundless claims." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). Put another way, the question is whether "the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citation omitted); *see also* SSR 85-28, *Titles II and XVI: Medical Impairments That Are Not Severe* (1985) ("Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step.")

The record reveals that the office of Plaintiff's primary care physician, Dr. Barry, treated Plaintiff for severe headaches at least seven times from 2012 to 2014, prescribing medication including Celebrex, Diclofenac, Tramadol, and Vicodin. (R. at 426, 436-38, 440-42, 518-24, 527-30, 578-81, 572-74.) On October 29, 2013, Dr. Barry and Advanced Nurse Practitioner ("ANP") Mason completed a Headache Questionnaire, reporting that Plaintiff suffered from both tension and migraine headaches at the severest level, which interfered with concentration, attention, memory, and capacity to work. (R. at 585.) They opined that Plaintiff's headaches would result in an average of six to ten absences from work a month. (R. at 585.)

At the hearing, Plaintiff testified that she "always [has] a headache" and that headaches interfere with her daily activities "at least twice a week," with some headaches lasting "more than a day." (R. at 56-58.) The Vocational Expert ("VE") testified that the limitations set forth by Plaintiff's primary care physician would make the performance of sustained work impossible. (R. at 81.)

In her opinion, the ALJ does not even mention Dr. Barry's Headache Assessment—a medical opinion that no other doctor contradicted. A treating physician's assessment should be given more weight, and an ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996)). Here, the ALJ justifies disregarding Plaintiff's headaches as a severe impairment because the "medical records are minimal regarding the complaint of and treatment for migraines," Plaintiff's "MRI showed only mild left neuroforaminal stenosis," and Plaintiff's treating physician and ANP "do not provide details regarding these conditions during examinations." (R. at 30.)

The Court disagrees with the ALJ's conclusion that medical records are "minimal" and not sufficiently detailed. Plaintiff's primary care physician reported Plaintiff's severe headaches in numerous treatment notes, and those reports were more than sufficient for the purpose of documenting Plaintiff's condition. *See Orn*, 495 F.3d at 634. Plaintiff was treated for her headaches at each visit to Dr. Barry's office. Moreover, the ALJ is neither called upon nor qualified to interpret an MRI and determine whether it supports or does not support a finding by Plaintiff's primary care physician that Plaintiff suffers from severe headaches. *See Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017). As a result, the ALJ failed to provide clear and convincing reasons to disregard the medical assessments of Dr. Barry and ANP Mason.

The ALJ certainly did not identify—nor does the record contain—substantial evidence to find that Plaintiff did not have a medically severe impairment of headaches. *See Webb*, 433 F.3d at 687. Not only does the record support such a severe impairment

finding, but, when crediting the treating physician's unrefuted Headache Assessment in this case and the limitations identified therein, the Court can only conclude that Plaintiff is disabled under the Act based on the VE's testimony at the hearing before the ALJ.

**B. The ALJ Failed to Give Sufficient Reasons to Discount Plaintiff's Symptom Testimony**

Plaintiff also argues that the ALJ erred in her consideration of Plaintiff's symptom testimony (Pl.'s Br. at 19-25), and the Court agrees. In the Ninth Circuit, the evaluation of a claimant's symptom testimony has two steps:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. That is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014).

Here, the ALJ justified discounting Plaintiff's symptom testimony by simply stating "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. at 30.) The ALJ then proceeded to review the medical evidence without making any connection to Plaintiff's testimony regarding the severity of her headaches. This is both insufficient and precisely what the Ninth Circuit has instructed not to do. *See Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014); *Garrison*, 759 F.3d at 1014.

The ALJ also discounted Plaintiff's headache testimony by finding it was inconsistent with her reports of daily activities. (R. at 31.) For example, she found that Plaintiff's "recent trip" on vacation and "glass artist" hobby are inconsistent with her pain symptoms, although the inconsistency is entirely unclear to the Court. *See Zavalin v. Colvin*, 778 F.3d 842, 848 (9th Cir. 2014) (finding ALJ improperly relied on a claimant's activities where there was insufficient evidence as to the extent, manner or complexity of the activities). Moreover, even if Plaintiff is intermittently able to be active, "[o]ccasional symptom-free periods . . . are not inconsistent with disability." *Lester*, 81 F.3d at 833; *see also Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001). In sum, in addition to erring by disregarding the treating physician's evaluation of Plaintiff's headaches, the ALJ erred by failing to provide the requisite specific, clear and convincing reasons for rejecting Plaintiff's symptom testimony.

### C. The Credit-As-True Rule Applies

Plaintiff asks that the Court apply the "credit-as-true" rule, which would result in remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl.'s Br. at 24-25.) The credit-as-true rule only applies in cases that raise "rare circumstances" which permit the Court to depart from the ordinary remand rule under which the case is remanded for additional investigation or explanation. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1102 (9th Cir. 2014). These rare circumstances arise when three elements are present. First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence. *Id*. at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id*. at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id*. Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole,

leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id*. (citations omitted).

In this case, the credit-as-true rule applies. As the Court discussed above, the ALJ failed to provide legally sufficient reasons for rejecting the opinion of Plaintiff's treating physicians—who identified limitations inconsistent with Plaintiff's ability to perform sustained work—and Plaintiff's symptom testimony. If this evidence is properly credited, the Court sees no significant conflicts or ambiguities that are left for the ALJ to resolve. Moreover, considering the record as a whole, including Plaintiff's testimony as to her physical limitations—which the Court credits as a matter of law—and the VE's testimony, the Court is left with no doubt that Plaintiff is disabled under the Act. *See Garrison*, 759 F.3d at 1022-23; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040-41 & n.12 (9th Cir. 2007).

**IV.    CONCLUSION**

Plaintiff raises materially harmful error on the part of the ALJ, and, for the reasons set forth above, the Court must reverse the SSA's decision denying Plaintiff's Application for Disability Insurance Benefits under the Act and remand for a calculation of benefits.

IT IS THEREFORE ORDERED reversing the August 28, 2015 decision of the Administrative Law Judge, (R. at 22-35), as upheld by the Appeals Council on January 31, 2017, (R. at 1-3).

IT IS FURTHER ORDERED remanding this case to the Social Security Administration for a calculation of benefits.

IT IS FURTHER ORDERED directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 19th day of July, 2018.

Honorable John J. Tuchi
United States District Judge